IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

IRENE LOPEZ-FLORES,                                    Case No. 6:19-cv-00904-AA
                                                       **OPINION AND ORDER**
                    Plaintiff,

          v.

DOUGLAS COUNTY and JOHN
HANLIN, sheriff of Douglas County,
in his official capacity,

                    Defendants.

_____

AIKEN, District Judge:

          Plaintiff Irene Lopez-Flores ("plaintiff") brought a 42 U.S.C. § 1983 claim (doc. 1) against defendants Douglas County and John Hanlin, sheriff of Douglas County seeking damages for violation of her rights under the Fourth and Fourteenth Amendments.  Defendants have moved to dismiss the complaint for failure to state a claim.[1]  (doc. 14).  For the reasons below, defendants' Motion to Dismiss (doc. 14) is denied.

_____

          [1] The United States of America has filed a statement interest in support of defendants' position. (doc. 18)

Page 1 – OPINION AND ORDER

## BACKGROUND

The factual background is brief and drawn from the allegations in plaintiff's complaint.  On December 4, 2017, plaintiff was arrested in Douglas County with probable cause for alleged violations of Oregon law.  Plaintiff's arrest resulted in her detention in the Douglas County Jail ("Jail").  On December 5, 2017, plaintiff was arraigned on the alleged Oregon law violations, and Douglas County Circuit Court set bail at $15,000.  That same day, a U.S. Immigration and Customs Enforcement ("ICE") agent sent the Jail an immigration detainer (Form I-247A) as well as a warrant for removal/deportation (Form I-205) requesting that the Jail or Sheriff notify ICE before plaintiff was released and maintain custody of plaintiff for a period not exceed 48 hours beyond when she would otherwise have been released to allow the Department of Homeland Security ("DHS") to assume custody of her.  By 10:15 a.m. on December 7, 2017, plaintiff had posted bail for the Oregon law violations. Defendants maintained custody of plaintiff until 12:30 p.m., at which time DHS agents took custody of plaintiff for immigration violations.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8(a)(2) allows for a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

While the complaint does not need "detailed factual allegations," the complaint must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In assuming the facts in the complaint as true and viewing them in a light most favorable to the nonmoving party, the court "determine[s] whether [the factual allegations] plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

## DISCUSSION

Plaintiff alleges defendants are liable under 42 U.S.C. § 1983 for acting "pursuant to official municipal policy of some nature [that] cause[d] a constitutional tort." *Monell v. Dep't of Soc. Services.*, 436 U.S. 658, 691 (1978).  A local government can only be sued when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.  Plaintiff alleges that Sheriff Hanlin, a county employee, acted "pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standing operating procedure of the local governmental entity," *Gillette v. Delmore*, 972 F.2d 1342, 1346 (9th Cir. 1992) (internal quotations and citations omitted), violating plaintiff's constitutional right to be free from unlawful seizure guaranteed by the Fourth Amendment.  Plaintiff further alleges that the Jail has a "practice, policy, or custom of detaining inmates, solely due to the existence of an immigration detainer," regardless of whether they have probable cause to extend

plaintiff's detention after she posted bail.  Compl. ¶ 16-17.

Defendants do not dispute that they extended plaintiff's detention based on the detainer request and administrative warrant.  Defendants, however, move to dismiss plaintiff's complaint on the grounds that (1) plaintiff has not sufficiently alleged facts to show defendant have a practice, policy, or custom of unlawfully detaining inmates based on an immigration detainer and (2) plaintiff's detention was based on probable cause and does not constitute a valid Fourth Amendment violation claim.  The Court addresses each argument in turn.

I.    *Judicial Notice*

Defendants ask the Court to take judicial notice of several documents not included in plaintiff's complaint.  "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court may *not* take judicial notice of a fact that is subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotations and citations omitted) (emphasis added).

Specifically, defendants ask the court to take judicial notice of Douglas County Sheriff's Office Jail Procedures No. 1411 ("Jail Procedures"), Warren Decl. Ex. 2 16:3, ICE detainer (Form I-247A), and the warrant for removability (Form 1-205). Wildlund Decl. Ex. 1 15:4-5.  The Court declines to take judicial notice of the Jail Procedures.  Plaintiff alleges defendants acted contrary to any written policy.  Thus, there exists a dispute as to whether defendants' detention of plaintiff was based on the Jail's written policy or some other practice or custom and if this submitted policy

comports with requirements of the Fourth Amendment.[2]

The Court, however, does take judicial notice as to the existence of the ICE detainer (Form 1-247A) and the warrant for removability (Form 1-205). Wildlund Decl. Ex. 1 15:4-5. Neither party disputes these forms existed at the time of the incident. The Court does not take judicial notice of any of the facts contained within either of these documents, only that they exist.

II.    *Practice, Policy, or Custom*

Because the Court does not take judicial notice of the Jail Procedures, there exists a reasonable dispute as to what the Jail's practice, policy, or custom is based on plaintiff's allegations. Thus, the Court finds there are sufficient facts to reasonably infer the Jail has a practice or custom of extending detention of inmates without a specific finding of probable cause, as outlined below.

Defendant's primarily argue that the detention which occurred here did not violate plaintiff's Fourth Amendment rights, meaning that there was no violation of *Monell.* Whether probable cause extended from federal officials to defendants is discussed more fully below.

III.    *Probable Cause for Detention*

It is well-established that "[t]he Fourth Amendment applies to all seizures of

---

[2] Because of the dispute of fact, plaintiff should be allowed discovery as to whether the Jail's practice of detaining an inmate pursuant to an ICE detainer and administrative warrant is the same as the written policy. In allowing discovery, the Court is not precluding defendants from bringing argument in future motions concerning this document or other Jail policies, practices, or customs regarding ICE detainers.

Page 5 – OPINION AND ORDER

the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975). Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). "If an individual is kept in custody for a new purpose after the individual is entitled to release, that individual was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification." *Roy v. Cty. of Los Angeles*, 2018 WL 914773, at *23 (C.D. Cal. Feb. 7, 2018) (internal citations omitted) Thus, where a "continued detention exceed[s] the scope of the Jail's lawful authority over the released detainee," the detention "constitute[s] a new arrest, and must be analyzed under the Fourth Amendment*." Miranda–Olivares v. Clackamas Cty.*, 2014 WL 1414305, at *10 (D. Or. Apr. 11, 2014).

"As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Therefore, removal of an alien is a "civil, not criminal matter." *Id.* at 396. It is constitutionally permissible for federal executive officials to rely on the probable cause for civil removability provided in an administrative warrant to arrest deportable aliens. *Abel v. United States*, 362 U.S. 217, 232-34 (1960). ICE officers are federal executive officials who can arrest and detain aliens on probable cause of removability. 8 U.S.C. § 1226. ICE officers "who have successfully completed basic immigration law enforcement training" are authorized to arrest removable aliens. 8 U.S.C. §

287.5(c)(1); *see e.g.* 8 U.S.C. § 236.1(b)(1) (only authorized immigration officers may take aliens into custody "under the authority of Form I-200").

It is well established ICE officers must have probable cause of removability to be able to detain an alien. *See* 8 U.S.C. § 236.1(b)(1); *Abel*, 362 U.S. at 232-34. Courts in this District have previously held that the existence of an ICE detainer alone does not provide probable cause. *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305, at *11. Defendants correctly noted that ICE policy changed in 2017 so that "ICE immigration officers must establish probable cause to believe that the subject is an alien who is removable from the United States before issuing a detainer . . ." Issuance of Immigration Detainers by ICE Immigration Officers, ICE Policy No. 10074.2: § 2.4 (April 2, 2017).[3]

These detainers must also be accompanied by an administrative warrant, codifying an ICE officer's probable cause of removability. *Id.* Thus, the existence of an ICE detainer and administrative warrant here suggests that ICE officers had probable cause for plaintiff's removal. However, the question in this case is not whether ICE agents had probable cause to detain the plaintiff but rather whether ICE's probable cause imputed to the state defendants. For the reasons outline below, the Court finds ICE's probable cause did not impute to defendants.

/ / /

/ / /

---

[3] https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf.

Page 7 – OPINION AND ORDER

A.    *Probable cause under Federal law*

It is impossible for federal agents to be everywhere at once; therefore, "[f]ederal law specifies limited circumstances in which state officers may perform the functions of an immigration officer." *Arizona*, 567 U.S. at 408.  Under 8 U.S.C. § 1357(g)(1), DHS can "enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer."  These agreements are referred to as "287(g) agreements."  No such formal 287(g) agreement is present in this case.

Rather, defendants claim they were cooperating with request for detention by federal immigration officers based on the immigration officer's probable cause for a civil immigration violation.  Although not directly cited in defendant's Motion to Dismiss (doc. 14), the Statement of Interest of the United States of America (doc. 18) asserts defendants had authority to detain plaintiff under § 1357(g)(10)(B).  Section 1357(g)(10)(B) allows officers of a State "otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."  In *Arizona*, the Supreme Court reasoned "[t]here may be some ambiguity as to what constitutes cooperation under the federal law; but no coherent understanding of the term would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government."  567 U.S. at 410.

There is disagreement among courts as to what "cooperation" with the federal

government means in § 1357(g)(10)(B).   Defendants cite *Lopez-Lopez v. County of Allegan*, 321 F. Supp. 3d 794 (W.D. Mich. 2018), to argue local law enforcement agencies ("LLEAs") may cooperate with federal government by detaining a removable alien after receiving direction from an ICE officer in the form of an ICE detainer (Form I-247A) and administrative warrant (Form I-200).[4]   In *Lopez-Lopez*, the plaintiff was detained by a jail pursuant to an ICE detainer and a warrant, even though he had posted bail on his criminal matter. *Id.* at 796.  Plaintiff filed a § 1983 complaint for violation of his rights under the Fourth Amendment, but the district court later granted the county's motion to dismiss.  *Id.*  The court held LLEAs can "cooperate[] by complying with federal government's request to hold a removable alien for ICE" under § 1357(g)(10) at the request of ICE. *Id.* at 801.  This Court finds the reasoning in *Lopez-Lopez* unpersuasive.

The Court agrees, instead, with the conclusions reached in *Lunn v. Commonwealth*, 78 N.E.3d 1143 (Mass. 2017).   There the Supreme Court of Massachusetts held § 1357(g)(10) did not authorize LLEAs to detain the plaintiff after his criminal charges were dismissed, despite the jail having received an ICE detainer. 78 N.E.3d at 1159.  The court concluded because the other subsections of § 1357(g) gave LLEAs authority to detain and seize removable aliens under formal 287(g) agreements, "it is not reasonable to interpret § 1357(g)(10) as affirmatively granting

---

[4] Defendants cite to several cases to support their contention that detention pursuant to ICE detainers and warrants.  However, those cases dealt with federal officers arresting a person pursuant to an administrative warrant, not a county official detaining person pursuant to federal administrative warrant.

authority to all State and local officers to make arrests that are not otherwise authorized by State law." *Id.*

Other district courts have found likewise. For example, a district court in the Southern District of Florida has reasoned that:

> If 'otherwise cooperate' under Section 1357(g)(10), a catch-all provision, were read to allow local law enforcement to arrest individuals for civil immigration violations at the request of ICE, training, supervision and certification pursuant to a formal agreement between DHS and state officers described in the remaining provisions of Section 1357(g) would be rendered meaningless.

*Creedle v. Miami-Dade County*, 348 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018); *see also Lopez-Aguilar v. Marion County*, 296 F. Supp. 3d 959, 975 (S.D. Ind. Nov. 7, 2017) (8 U.S.C. § 1357(g)(10)(B) does not authorize "a 'separate grant' of authority to the states without trending to nullify the requirement of federal 'training, certification, and supervision' otherwise established by Section 1357(g)."); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (rejecting that § 1357(g)(10) provided state officers one of the "limited circumstances" in which they may enforce federal immigration law). Likewise, the Supreme Court of Montana recently held that a theory similar to the one advanced by defendants regarding § 1357(g) "would essentially render the purpose of 287(g) agreements meaningless." *Ramon v. Short*, 2020 MT 69, 399 Mont. 254, 274. The court further noted that

> If performing the arrest authority of an immigration officer, which arguably is the highest authority granted to an immigration officer, can be done on an ad hoc basis by state and local officers, regardless of state and local law, there would be no need for states to enter into 287(g) agreements.

*Id.*

Page 10 – OPINION AND ORDER

B.    *Probable cause under Oregon law*

More importantly, *Lopez-Lopez* did not consider whether LLEAs have permission by state law to detain aliens under ICE detainers and warrants. *Lunn* and *Ramon*, on the other hand, recognized the importance of state authorization. The language of § 1357(g) also recognizes the importance of state authorization. Under § 1357(g)(1), DHS can enter into formal 287(g) agreements "to the extent consistent with State and local law." The Court finds that to read § 1357(g)(10) as granting LLEAs authorization irrespective of state law renders the requirement of formal 287(g) agreements to be consistent with state law meaningless. Oregon law expressly does not authorize state or local law enforcement to seize or detain removable aliens. Or. Rev. Stat. § 181A.820(1).

Or. Rev. Stat. § 181A.820(1) provides that "[n]o law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration law." The statute does provides that "a law enforcement agency may arrest any person who: (a) [i]s charged by the United States with a criminal violation of federal immigration laws . . . and (b) [i]s subject to arrest for the crime pursuant to a warrant of arrest issued by a federal magistrate." Or. Rev. St. 181A.820(3).

Defendants rely on *Virginia v. Moore*, 553 U.S. 164 (2008), to support their argument that the Jail did not violate plaintiff's Fourth Amendment rights, even

though their actions might have been inconsistent with Oregon law.  In *Moore*, the Supreme Court concluded, "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment protections." *Id.* at 176.  However, "[t]he *Moore* Court said nothing about police authority to arrest someone for conduct that is not a crime at all." *Smith v. Kelly*, 2012 WL 1605123, at *2 (W.D. May 8, 2012).  While "*Moore* found that state distinctions between arrestable and nonarrestable crimes did not affect the constitutionality of an arrest . . . the Fourth Amendment has always incorporated state law distinctions between what is criminal and what is not." *Id.* at *4.

To argue a violation of Oregon law does not equate a violation of plaintiff's Fourth Amendment rights, defendants also cite to the *Martinez-Medina v. Holder*, where a Ninth Circuit panel held that, "the deputy sheriff's violation of Oregon law [Or. Rev. St. 181A.820] does not constitute a violation of the Fourth Amendment and, thus, cannot be the basis for finding an egregious Fourth Amendment violation." 673 F.3d 1029, 1035 (9th Cir. 2011).  In *Martinez-Medina*, the Ninth Circuit considered whether evidence obtained during the petitioners' arrests should be suppressed in the federal removal proceeding.  *Id.*  The petitioners were arrested by a Douglas County deputy sheriff for a civil immigration violation after the officer stopped the petitioners at a gas station.  *Id.* at 1031-33.  The court had to "deny the petition for review unless the deputy sheriff violated Petitioners' Fourth Amendment rights *and* that violation was egregious." *Id.* at 1034 (emphasis in original).  Importantly, the

Page 12 – OPINION AND ORDER

court concluded however, "we need not and do not decide whether the seizure violated Petitioners' Fourth Amendment rights because we conclude if the seizure violated Petitioners' Fourth Amendment rights, the violation was not egregious." *Id.* Since the court refused to address whether the seizure violated the petitioners' Fourth Amendment rights, the question remains as to whether in this case defendants have authority to detain plaintiff under federal law despite Oregon law's prohibition of such action.

C.  *Collective knowledge doctrine*

As stated above, in this case there are facts to suggest the ICE agents had probable cause of plaintiff's removability, which is a civil immigration violation. Defendants maintain ICE sent the detainer (Form 1-247A) and administrative warrant (Form I-205) outlining ICE's probable cause of plaintiff's removability. Defendants argue the delivery of the detainer and administrative warrant gave them collective knowledge of plaintiff's immigration violation.

In determining whether an arrest, detention, or seizure complied with the Fourth Amendment, courts "look[] to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (citing *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986). "Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant

requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *Id.* at 1037; *see also United States v. Hensley*, 468 U.S. 221, 231 (1985); *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976).

However, as was clearly stated in *Ramirez*, the collective knowledge doctrine applies to cases of criminal investigation. Here, the case involves a civil immigration violation. Defendants cite to *City of El Cenizo, Texas v. Texas* to prove the collective knowledge doctrine does in fact apply to cases of civil immigration violations. 890 F.3d 164, 187-88. The court in *El Cenizo* stated in dicta that "[u]nder the collective-knowledge doctrine . . . the ICE officer's knowledge may be imputed to local officials even when those officials are unaware of the specific facts that establish probable cause of removability." *Id.* at 187. The court finds the dicta unpersuasive.

The court declines to ignore Ninth Circuit precedent. Currently, the Ninth Circuit has only affirmed that the collective knowledge doctrine applies to criminal investigations. *See Ramirez*, 473 F.3d at 1032. The Ninth Circuit has yet to decide whether the doctrine extends to civil immigration matters. At this time, there is no evidence "to indicate any communication or cooperation between the ICE personnel who made the probable cause determination and the County officials who processed the detainer request." *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1258 (E.D. Wash. 2017), *dismissed as moot*, 716 Fed. Appx. 741 (2018) (declining to extend collective knowledge doctrine in an immigration context).

Communication and cooperation between federal, state, and local officials on

immigration matters is clearly permissible, but the role state and local officials can take in such matters is limited. *Id.* (citing to *Arizona*, 567 U.S. at 408. Indeed, state and local law enforcement and other officials are presumed to be unqualified and unable to perform the functions of federal immigration law enforcement officers, at least as those functions pertain to enforcement of civil immigration violations. *Id.* (citing 8 U.S.C. § 1357(g)(1)); cf. *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 464 (4th Cir. 2013) (citing *Arizona*, 567 U.S. at 407) ("Although the Supreme Court has not resolved whether local police officers may detain or arrest an individual for suspected criminal immigration violations, the Court has said that local law officers generally lack authority to arrest individuals [for] civil immigration violations.").

Here the Court finds that there was no communication between the federal officials and defendants in this case communicating probable cause other than the detainer and warrant for removal. Based on the facts alleged, even if there were sufficient communication to impute probable cause, defendants would not have authority to detain plaintiff as there was no formal agreement allowing them to do so. The Court sees no substantive reason to distinguish this case from the holding in *Miranda-Oliveras*. Accordingly, the Court finds that taking all the allegations in the complaint as true, plaintiff has adequately alleged a claim for relief at his stage of the proceedings.

/ / /

/ / /

Page 15 – OPINION AND ORDER

**CONCLUSION**

For the reasons set forth above, defendants' Motion to Dismiss (doc. 14) is DENIED.

IT IS SO ORDERED

Dated this _30th_ day of May 2020

_____/s/Ann Aiken_____
Ann Aiken
United States District Judge